# SUPREME COURT OF THE UNITED STATES

DON BLANKENSHIP *v.* NBCUNIVERSAL, LLC, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 22–1125.   Decided October 10, 2023

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, concurring in the denial of certiorari.

"The common law of libel at the time the First and Fourteenth Amendments were ratified did not require public figures to satisfy any kind of heightened liability standard as a condition of recovering damages." *McKee* v. *Cosby*, 586 U. S. \_\_\_, \_\_\_ (2019) (THOMAS, J., concurring in denial of certiorari) (slip op., at 6). To be sure, the law was not static; "[i]n the first decades after the adoption of the Constitution," the rule that "truth or good motives was no defense" to libel "was changed by judicial decision, statute or constitution in most States." *Beauharnais* v. *Illinois*, 343 U. S. 250, 254 (1952). But from the founding until 1964, the law of defamation was "almost exclusively the business of state courts and legislatures." *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323, 369–370 (1974) (White, J., dissenting).

The Court usurped control over libel law and imposed its own elevated standard in *New York Times Co.* v. *Sullivan*, 376 U. S. 254 (1964). It decreed that the Constitution required "a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.*, at 279–280. The Court did not base this "actual malice" rule in the original meaning of the First Amendment. It limited its analysis of the historical record to a loose inference from opposition surrounding the Sedition

Act of 1798, see *McKee*, 586 U. S., at \_\_\_–\_\_\_ (opinion of THOMAS, J.) (slip op., at 12–13), and primarily justified its constitutional rule by noting that 20th century state-court decisions and "the consensus of scholarly opinion apparently favor[ed] the rule," *New York Times*, 376 U. S., at 280, and n. 20.

I continue to adhere to my view that we should reconsider the actual-malice standard. See *Counterman* v. *Colorado*, 600 U. S. 66, 105 (2023) (dissenting opinion); *Coral Ridge Ministries Media, Inc.* v. *Southern Poverty Law Center,* 597 U. S. \_\_\_, \_\_\_ (2022) (same) (slip op., at 3); *Berisha* v. *Lawson*, 594 U. S. \_\_\_, \_\_\_ (2021) (same) (slip op., at 3); *McKee*, 586 U. S., at \_\_\_ (opinion of THOMAS, J.) (slip op., at 14). "*New York Times* and the Court's decisions extending it were policy-driven decisions masquerading as constitutional law." *Id.*, at \_\_\_ (same) (slip op., at 2). The decisions have "*no relation* to the text, history, or structure of the Constitution." *Tah* v. *Global Witness Publishing, Inc.*, 991 F. 3d 231, 251 (CADC 2021) (Silberman, J., dissenting in part). And the actual-malice standard comes at a heavy cost, allowing media organizations and interest groups "to cast false aspersions on public figures with near impunity." *Id.,* at 254. The Court cannot justify continuing to impose a rule of its own creation when it has not "even inquired whether the First or Fourteenth Amendment, as originally understood, encompasses an actual-malice standard." *Coral Ridge Ministries*, 597 U. S., at \_\_\_ (opinion of THOMAS, J.) (internal quotation marks omitted) (slip op., at 3).

Petitioner Don Blankenship asks us to revisit *New York Times*. I agree with the Court's decision not to take up that question in this case because it appears that Blankenship's claims are independently subject to an actual-malice standard as a matter of state law. See *State ex rel. Suriano* v. *Gaughan*, 198 W. Va. 339, 356, 480 S. E. 2d 548, 565 (1996). In an appropriate case, however, we should reconsider *New*

*York Times* and our other decisions displacing state defamation law.